# U.S. DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION-DETROIT

**UNITED STATES OF AMERICA**

    **Plaintiff,**

v.                                         Case No. 14-20119
                                                 Hon. Nancy Edmunds

**D-4 MARIO GARNES.**

    **Defendants.**

_____/

| | |
|---|---|
| UNITED STATES ATTORNEY | AMBERG & AMBERG, PLLC |
| Barbara L. McQuade (P45423) | James W. Amberg (P68564) |
| Eric Doeh (P69652) | Attorneys for Defendant Garnes |
| Attorneys for the Government | 104 W 4th St., Suite 305 |
| 211 W. Fort Street, Suite 2001 | Royal Oak, MI 48067 |
| Detroit, MI | 248.681.6255 office |
| 313.226.9100 office | 248.681.0115 fax |
| | www.amberglaw.net |

_____/

**DEFENDANT GARNES'S MOTION IN LIMINE TO SUPPRESS EVIDENCE OF TATTOOS, SONG LYRICS, AND MARIJUANA GROW UNDER FRE 402, 403, AND 404(a)**

*Certificate of Service*
*Brief in Support*
*Notice of Hearing*

_____

Now comes Mario Garnes, by his attorney, James Amberg, and respectfully requests this Court to exclude any reference to Mr. Garnes's tattoos, the song lyrics discovered during the search of Mr. Garnes residence, and any evidence relating to the marijuana grow found at said residence because the evidence fails to meets the standards of FRE 402, 403, and 404(a).

*AMBERG & AMBERG, PLLC*
*ATTORNEYS AND COUNSELORS*
*104 W. FOURTH STREET, SUITE 305*
*ROYAL OAK, MI 48067*
*WWW.AMBERGLAW.NET*
*(248) 681-6255*

Pursuant to LCR 7.1, counsel for Mr. Garnes contacted AUSA Eric Doeh seeking concurrence in the relief requested in this Motion on Monday, March 10, 2015. Concurrence was denied.

Respectfully submitted,

/s/James W. Amberg
AMBERG & AMBERG, PLLC
James W. Amberg P68564
Attorneys for D-4 Mario Garnes
104 W 4th St., Suite 305
Royal Oak, MI 48067
248.681.6255
248.681.0115 (fax)

Dated: March 10, 2015

## Notice of Hearing

Take notice that the Motion described within this document will be heard as soon as possible.

## Certificate of Service

I, James W. Amberg, attorney at law, certify that on March 10, 2015, I caused a copy of this pleading to be served upon the Clerk of the Court and United States District Attorney via E-File.

/s/ James W. Amberg
James W. Amberg (P68564)

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
104 W. FOURTH STREET, SUITE 305
ROYAL OAK, MI 48067
WWW.AMBERGLAW.NET
(248) 681-6255

2

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
104 W. FOURTH STREET, SUITE 305
ROYAL OAK, MI 48067
WWW.AMBERGLAW.NET
(248) 681-6255

# U.S. DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION-DETROIT

**UNITED STATES OF AMERICA**

    **Plaintiff,**

v.                                               Case No. 14-20119
                                                 Hon. Nancy Edmunds

**D-4 MARIO GARNES.**

    **Defendants.**

_____/

| | |
|---|---|
| UNITED STATES ATTORNEY | AMBERG & AMBERG, PLLC |
| Barbara L. McQuade (P45423) | James W. Amberg (P68564) |
| Eric Doeh (P69652) | Attorneys for Defendant Garnes |
| Attorneys for the Government | 104 W 4th St., Suite 305 |
| 211 W. Fort Street, Suite 2001 | Royal Oak, MI 48067 |
| Detroit, MI | 248.681.6255 office |
| 313.226.9100 office | 248.681.0115 fax |
| | www.amberglaw.net |

_____/

**BRIEF IN SUPPORT OF DEFENDANT GARNES'S MOTION IN LIMINE TO SUPPRESS EVIDENCE OF TATTOOS, SONG LYRICS, AND MARIJUANA GROW UNDER FRE 402, 403, AND 404(a)**

_____

### I.     INTRODUCTION

Mario Garnes requests this Court to exclude any reference to Mr. Garnes's tattoos, the song lyrics discovered during the search of Mr. Garnes residence, and any evidence relating to the marijuana grow found at said residence

The evidence complained of should be excluded as inadmissible character evidence which is irrelevant and highly prejudicial to the case against Mr. Garnes.

### II.    STATEMENT OF THE CASE AND RELEVANT FACTS

The Third Superseding Indictment was returned on March 4, 2015, charging nine defendants in six separate counts. Of those counts, Mr. Garnes is specifically

3

charged with Count 1, RICO Conspiracy, and Count 6, Possession of a Firearm in Furtherance of a Crime of Violence.

According to reports, it appears that it is the position of the Government that from approximately from 2007 and until recently, Mr. Garnes, as well as the other co-defendant, were members of what has been labeled the "Bounty Hunter Blood" gang (hereafter "BHB"). During this course of time, it is alleged that members of the BHB were involved in various unlawful conduct, including illegal weapon possession, narcotic trafficking, and murder. The outcome of these activities ultimately resulted in the Government choosing to pursue the BHB's as a criminal organization under the RICO act.

As to Mr. Garnes, the Government has put forward allegations that he was involved with numerous overt acts in aid of the BHBs. Viewing the 73 listed overt acts in the Overt Acts portion of the Third Superseding Indictment, it is alleged that Mr. Garnes:

> (¶12) possessed with the intent to distribute and distributed controlled substances, including heroin, powder cocaine, crack cocaine, ecstasy, Vicodin, and marijuana;
>
> (¶38) posted a Facebook message offering to be a middle man to help sell pounds of marijuana;
>
> (¶39) posted a Facebook message in which he discussed borrowing guns from a fellow BHB member; and
>
> (¶56) possessed BHB paraphernalia, pictures of BHB tattoos, marijuana and other drug trafficking materials.

Of importance to this Motion, on October 24, 2013, a search warrant was executed at 16232 Hartwell Street, Detroit, MI 48235. As this was Mr. Garnes residence, he was discovered and restrained. The search resulted in the discovery of what has been labeled BHB 'paraphernalia' by the Government. This included a notebook containing song lyrics, lists of names, drawings, and other information.

4

Additionally, Agents photographed Mr. Garnes various tattoos. Finally, a marijuana grow operation and devices consistent with said operation were also discovered.

**ARGUMENT**

FRE 404(a) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FRE 402 states that "[e]vidence which is not relevant is not admissible." FRE 401 states that "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FRE 403 indicates that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

"To determine whether the proffered evidence is admissible for a proper purpose, the court must decide 'whether that evidence is probative of a material issue other than character.'" *United States v Carney*, 387 F3d 436, 451 (6th Cir. 2004) (quoting *Huddleston v United States*, 485 US 681, 686 (1988) Accordingly, the 6th Circuit has offered the following guidance in determining admissibility:

> "First, the trial court must ascertain whether the proffered evidence is relevant and admissible for a proper purpose. *United States v Zelinka*, 862 F2d 92, 98 (6th Cir. 1988) To be relevant, "the evidence must relate to a matter which is 'in issue,' and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *United States v Blankenship*, 775 F2d 735, 739 (6th Cir.1985) (*citations omitted*) To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide, "whether that evidence is probative of a material issue other than character." *Huddleston v United States*, 485 US 681, 686 (1988)
>
> Finally, the court must determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice."

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
104 W. FOURTH STREET, SUITE 305
ROYAL OAK, MI 48067
WWW.AMBERGLAW.NET
(248) 681-6255

5

Fed. R. Evid. 403; *Huddleston*, 485 US at 687  The district court has broad discretion in balancing probative value against potential prejudicial impact. *United States v Dabish*, 708 F2d 240, 243 (6th Cir.1983)"

Quoting *United States v Carney*, 387 F3d 436, 451 (6th Cir. 2004)

In determining whether the offered evidence is probative of a material issue other than character, the court must apply a three part inquiry as follows: "(1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v Bell*, 516 F3d 432, 441 (2008)  Accordingly, the "government's purpose in introducing the evidence must be to prove a fact that the defendant has placed, or conceivably will place, in issue, or a fact that the statutory elements obligate the government to prove." *United States v Merriweather*, 78 F3d 1070, 1074 (6th Cir. 1996)

I.  Mr. Garnes Tattoos

During the aforementioned search of his home, Agents extensively photographed Mr. Garnes various tattoos.  (See **exhibit A**, Tattoo Pictures) Specifically, these tattoos included pictures of dogs, the word "Bl24dhound,[1]" the word "Gabriel," a representation of the Detroit Chimera Mural by artist Kobie Solomon, a drawing of a revolver, as well as additional pictures.  It is assumed that the Government will attempt to introduce these tattoos in order to prove Mr. Garnes alleged gang involvement.

Applying a relevancy analysis to the evidence of the tattoos, it is argued that they are irrelevant to any issues in the case at hand and are inadmissible for any other purpose.  The vast majority of Mr. Garnes's tattoos have meanings which seem to indicate a pride in the City of Detroit (the Detroit Chimera Mural), love of animals (pictures of dogs), and references to religion (ex. the angel Gabriel).

---

[1] It is unclear from the discovery exactly how the bloodhound tattoo is spelled.

6

Accordingly, the only tattoo with any argument for admissibility under a proper purpose is that of the "Bl24dhound" tattoo. "Evidence of gang affiliation is relevant where it demonstrates the relationship between people and that relationship is an issue in the case, such as in a conspiracy case. *United States v Ford*, 761 F3d 641, 649 (6th Cir. 2015) "However, gang affiliation evidence is inadmissible if there is no connection between the gang evidence and the charged offense." *Id* at 649-650 (internal citations omitted) Other Circuits have dealt with this issue, finding tattoos inadmissible when they are only admitted to show membership in a gang, because "the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict." *United States v Irvin*, 87 F3d 860, 865 (7th Cir. 1996)

In the case at hand, any reference to the Bl24dhound tattoo must be suppressed as the evidence is simply general gang affiliation evidence. It is the responsibility of the Government to provide a proper purpose for this evidence, of which there appears to be no specific connection between the tattoo and the BHB. Thus suppression is appropriate because otherwise the jury will be left to conclude Mr. Garnes involvement with the BHB simply from a tattoo that could have many different meanings. For example, a jacket of the AGH Highriders motorcycle club belonging to Mr. Garnes was discovered during the search. There is as much of an argument that any symbolic tattoo could be related to his membership in that organization unless the Government can produce an expert specifically versed in the dealings of the BHB Detroit who could testify otherwise.

II. Song Lyrics

During the search of Mr. Garnes residence, a notebook was discovered. Included in the notebook were the apparent rough draft lyrics to four separate

7

songs, namely "My Favorite Weapon," "Shottas," "My Bitch," and "Good Morning." (See **exhibit b**, Song Lyrics) Although counsel is admittedly aloof when it comes to the hidden themes and meanings of songs, a clear viewing of the four songs seem to indicate that the writer uses the reference of objects such as 'his favorite weapon' or allusions to things such as 'my bitch,' as metaphors for deeper meanings. For example, 'My Bitch' throughout the song discusses what appears to be a love interest of the author. Yet at the end of the song, the truth is revealed, as the author tells the audience that 'My Bitch' is not a person, rather "Mary Jane," a common slang for marijuana. The metrical structure of 'My Favorite Weapon' seems to follow this same pattern, although the author stops short of letting the listener know exactly what his or her favorite weapon actually is.

Another of the songs, 'Shottas,' at first glance appears to be a discussion involving possible vague allusions to gang activity. However, a more detailed reading of the song suggests that the author, a "Shotta," in fact is criticizing an anonymous gang or gang members for their apparent lack of organization. This notion is seconded by the argument that a 'shotta,' is apparently a word of Jamaican origin which symbolizes an individual who does not need to be in a crew or run with anyone.[2] In fact, a viewing of the Facebook evidence appears to indicated that "Shotta" is in fact the name of Mr. Garnes's dog. (See **exhibit c**, Facebook Evidence Pg. 791) Allegorical lyrics about one's dog are not unheard of in popular culture. (See ex Sweet Child of Mine by Guns and Roses)

Viewing these song lyrics, they have no relevancy to the issues involved in the case at hand. Because the meanings of the songs are vague and seem to not involve issues of gang membership or activities, the probative value of them is

---

[2] Counsel conducted internet searches regarding the term 'Shottas' and although the websites (for ex. http://www.urbandictionary.com/define.php?term=shotta ) would likely be thought of as marginally accurate at best, the same types of definitions were repeated throughout nearly all sites discussing this slang term.

nebulous. However, if they were to be admitted against Mr. Garnes, the prejudicial effect of them would be tremendous as it would allow the jury to formulate their own conclusions on the meanings of the songs and make unsubstantiated conclusions based with no evidentiary foundation.

Additionally, even if the Court finds the lyrics to survive the relevancy analysis, they must be barred as they are the author's protected speech under the First Amendment. In the context of a sentencing hearing, the Supreme Court has reasoned that the First Amendment bars the admission of a defendant's "abstract beliefs . . . when those beliefs have no bearing on the issue being tried." *Dawson v Delaware*, 503 US 159, 168 (1992) Nor may the Government introduce a defendant's speech simply to paint that defendant as "morally reprehensible" based on the views expressed. See ex *United States v Fell*, 531 F3d 197, 229 (2d Cir. 2008) Thus the author's lyrics seem to fit the definition of 'abstract,' and must be barred.

    III.    Marijuana Grow Operation

The search of Mr. Garnes residence resulted in the discovery of twelve marijuana plants, a scale, and other marijuana related paraphernalia. Additionally, and of great importance to this Motion, Mr. Garnes Michigan Medical Marijuana card and Physician Certification were also discovered.

As the Court is certainly aware, the citizenry of Michigan recently passed the Michigan Medical Marihuana Act, MCL §333.26421, et seq. This Citizens Initiative law allows for "registered patients" to be in possession, grow, and use certain amounts of marijuana. There are two separate defenses statutorily available to a medical marijuana patient, a Section §4 defense in which the individual must meet certain statutory requirements set forth in MCL §333.26424. MCL §333.26424(1) states that:

9

"A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. Any incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount. The privilege from arrest under this subsection applies only if the qualifying patient presents both his or her registry identification card and a valid driver license or government-issued identification card that bears a photographic image of the qualifying patient." *Id*

As a qualifying patient, Mr. Garnes was certainly allowed to possess the twelve plants discovered during the search. Further, it is noted that the searching agents actually acknowledged such, but indicated that this may not have passed state muster do to the lack of a lock on the door to the room where the marijuana was found.

Even if that Mr. Garnes is unable to meet these requirements, MCL §333.26428 allows for dismissal of the criminal charge if, at an evidentiary hearing, he establishes the following three elements:

(1) a physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana;

(2) the defendant did not possess an amount of marijuana that was more than reasonably necessary for this purpose; and

(3) the defendant's use was to treat or alleviate the patient's serious or debilitating medical condition or symptoms." *People v Kolanek*, 491 Mich 382, 415-416; 817 NW2d 528 (2012)

10

There is no question that Mr. Garnes possessed a physician certification which indicated that he would benefit from the use of marijuana.[3] The amount of marijuana discovered in his possession was a reasonable amount necessary to treat his condition. His condition, a debilitating version of Crohn's disease, is an enumerated debilitating medical condition MCL §333.26423(b)(1). Simply put, if this were a State prosecution, Mr. Garnes would have a slam dunk defense to any charges involving the manufacturing, possession, or use of the marijuana discovered.[4]

Because Mr. Garnes was not breaking any state laws with regard to his possession and use of medicinal marijuana, the issue now must become what relevancy the evidence of the marijuana grow operation would have to the case at hand. It is argued that there is no relevance to any fact at issue because the only evidence of the alleged participation of Mr. Garnes in Overt Act ¶12, outside of the discovered marijuana grow, is a vague reference found on Facebook (see Overt Act ¶38) in which it is alleged that Mr. Garnes allegedly offered to be a middle man to help sell pounds of marijuana.

Even if the Court finds some other evidence that Mr. Garnes was selling marijuana illegally, it is further irrelevant to the case at hand unless the Government can somehow evidence Mr. Garnes doing this for the BHB. Counsel has scoured the discovery and is unable to find anything that would indicate Mr. Garnes selling any type of narcotic, let alone specifically marijuana for the BHB. Thus the marijuana grow operation evidence is irrelevant.

---

[3] This is seconded by his bond conditions in the case at hand as Mr. Garnes is permitted to use Marinol, an FDA approved pharmaceutical, which contains the same active ingredients as marijuana.

[4] Counsel has won these types of cases with far worse facts. See ex *People v Sommer* (MI COA No. 319184)(case stayed pending outcome of *People v Hartwick*, 496 Mich 851; 846 NW2d 922 (2014))

11

In addition to its irrelevancy, the marijuana grow operation serves little probative value to any issues involved in the case, yet if introduced will have a great prejudicial effect on the jury. Mr. Garnes marijuana grow was nothing more than a legal method to procure his medicine used to treat his Crohn's disease. If it is allowed to be introduced, the Government will certainly do so with the argument that Mr. Garnes was growing this marijuana for the BHB, an accusation which carries with it no evidential weight. Nevertheless, this evidence will surely mislead the jury and will confuse the issues. Thus all evidence of the marijuana grow operation must be suppressed.

### III. CONCLUSION

Defendant Garnes requests this Court to exclude any reference to his tattoos, the song lyrics discovered during the search, and any evidence relating to the marijuana grow. Simply put, the evidence as it exists would serve no admissible purpose except as improper character evidence barred by FRE 404(a).

        Respectfully submitted,

        /s/*James W. Amberg*
        AMBERG & AMBERG, PLLC
        James W. Amberg P68564
        Attorneys for D-4 Mario Garnes
        104 W 4th St., Suite 305
        Royal Oak, MI 48067
        248.681.6255
        248.681.0115 (fax)

Dated: March 10, 2015

AMBERG & AMBERG, PLLC
ATTORNEYS AND COUNSELORS
104 W. FOURTH STREET, SUITE 305
ROYAL OAK, MI 48067
WWW.AMBERGLAW.NET
(248) 681-6255